NOTICE OF ISSUANCE OF MANDATE

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

September 9, 2005

**MANDATE**

TO: Clerk, District Court/Agency

FROM:  Catherine T. Robinson
       Deputy Clerk

RE: 00-2028 Reliance Insurance v. William R. Miller
    CA-97-3194-MJG
    04-1843 Reliance Insurance v. William R. Miller
    CA-04-216-WDQ
    CA-04-255-WDQ
    BK-00-6-1758-JS
    BK-00-6-3699-JS

HEREWITH IS THE MANDATE OF THIS COURT, ISSUED THIS DATE,
ON THE JUDGMENT ENTERED BY THE COURT ON 8/18/05.

[ ] Order and Certified Copy of Judgment
[x] Opinion and Certified Copy of Judgment
[ ] Order on Costs
[ ] Order dismissing appeal R42(b) or Local Rule 45
[ ] Other: _____
[ ] The record has been retained for use in case number _____

cc:  James Russell Schraf
     Philip Melton Andrews

SCANNED

JUDGMENT

FILED: August 18, 2005

UNITED STATES COURT OF APPEALS

for the

Fourth Circuit

No. 00-2028
CA-97-3194-MJG

RELIANCE INSURANCE COMPANY, INCORPORATED, a Pennsylvania
corporation

       Plaintiff - Appellee

  and

UTICA MUTUAL INSURANCE COMPANY

       Third Party Defendant

  v.

WILLIAM RAY MILLER, II; DONNA MANNINO

       Defendant & Third Party Plaintiff - Appellants

     and

J. L. HICKMAN & COMPANY, INCORPORATED, a/k/a IFA Insurance
Services, Incorporated, a Texas corporation; JOHN L. HICKMAN

       Defendants

No. 04-1843
CA-04-216-WDQ
CA-04-255-WDQ
BK-00-6-1758-JS
BK-00-6-3699-JS

WILLIAM RAY MILLER; DONNA MANNINO

       Debtor - Appellants

  v.

RELIANCE INSURANCE COMPANY

             Creditor - Appellee


                 --------------------
Appeal from the United States District Court for the
District of Maryland at Baltimore
                 --------------------

In accordance with the written opinion of this Court filed this day, the Court affirms the judgment of the District Court.

A certified copy of this judgment will be provided to the District Court upon issuance of the mandate.  The judgment will take effect upon issuance of the mandate.


                       /s/ Patricia S. Connor
                       _____
                              CLERK


A True Copy, Teste:
Patricia S. Connor, Clerk
BY _____
        Deputy Clerk

**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

No. 00-2028

———————————

RELIANCE INSURANCE COMPANY, INCORPORATED, a
Pennsylvania corporation,

Plaintiff - Appellee,

and

UTICA MUTUAL INSURANCE COMPANY,

Third Party Defendant,

versus

WILLIAM RAY MILLER, II; DONNA MANNINO,

Defendants & Third Party Plaintiffs - Appellants,

and

J. L. HICKMAN & COMPANY, INCORPORATED, a/k/a
IFA Insurance Services, Incorporated, a Texas
corporation; JOHN L. HICKMAN,

Defendants.

———————————

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  Marvin J. Garbis, Senior District Judge.
(CA-97-3194-MJG)

———————————

No. 04-1843

WILLIAM RAY MILLER; DONNA MANNINO,

Debtors - Appellants,

versus

RELIANCE INSURANCE COMPANY,

Creditor - Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore.  William D. Quarles, Jr., District Judge. (CA-04-216-WDQ; CA-04-255-WDQ; BK-00-6-1758-JS; BK-00-6-3699-JS)

Argued: February 1, 2005                Decided: August 18, 2005

Before MICHAEL and DUNCAN, Circuit Judges, and Robert E. PAYNE, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** James Russell Schraf, LOGAN RUSSACK, L.L.C., Annapolis, Maryland, for Appellants.  Philip Melton Andrews, KRAMON & GRAHAM, Baltimore, Maryland, for Appellee.  **ON BRIEF:** Victor I. Weiner, LIPSHULTZ AND HONE, CHARTERED, Silver Spring, Maryland, for Appellants.  Kathleen A. Birrane, KRAMON & GRAHAM, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

William Ray Miller, II and Donna Mannino appeal from the award of summary judgment against them on a claim of constructive fraud brought by Reliance Insurance Company, Inc.[1]  For the reasons set forth below, we affirm the judgment entered by the district court.

Miller and Mannino also appeal from judgments entered against them in related adversary proceedings in the bankruptcy court which were affirmed by the district court.[2]  We also affirm those judgments.


I.

Miller and Mannino deny any culpable animus respecting the facts that gave rise to this litigation, and they dispute the legal conclusions reached by the district court in granting summary judgment and in refusing the discharge in bankruptcy.  However, the record discloses that the material facts outlined below are not genuinely in dispute.

John L. Hickman & Company, Inc. ("Hickman, Inc.") was a Texas corporation with a branch office in Maryland.  Hickman, Inc. traded as IFA Insurances Services ("IFA").  The Chief Executive Officer

---

[1] That appeal is No. 00-2028.  The appeal was stayed pending resolution of related cases in the bankruptcy court.

[2] That appeal is No. 04-1843.  Reliance originally filed separate adversary actions against Miller and Mannino, but those cases were consolidated by the bankruptcy court and the district court.

and sole shareholder of Hickman, Inc. was John L. Hickman. Miller and Mannino were employed by Hickman, Inc. as insurance agents.

Miller began working for Hickman, Inc. in September 1992 and continued working there until March 31, 1997, serving as the company's Executive Vice-President and Chief Operating Officer in the Maryland office. Mannino began working for Hickman, Inc. in early 1994 and continued working there until March 31, 1997. Mannino was, at various times, Hickman, Inc.'s Assistant Vice-President, office manager, and customer service representative. At all relevant times, Miller and Mannino were licensed resident insurance agents in Maryland, and thus were subject to Maryland's insurance laws and regulations. Hickman, Inc. ceased operations in Maryland on March 31, 1997.

It was the business of Hickman, Inc. to sell insurance coverage and then to place that coverage with one or more insurers. As part of the conduct of its regular business operations, Hickman, Inc. engaged in a financial scheme which Hickman devised and in which Miller and Mannino knowingly participated. The litigation which prompted these appeals arose as a consequence of that financial scheme and its ultimate failure.

Under the scheme, when Hickman, Inc. placed coverage with an insurer, it requested, as a matter of course, the insurer to agree to an installment payment plan (preferably interest-free) by which the insured would remit monthly premium payments through Hickman,

4

Inc. At the same time, the scheme called for Hickman, Inc. to arrange for the insured to finance the premium through an unrelated financing entity. However, under the scheme, the insured was not informed of the availability of an interest-free installment premium payment plan and the insurer was not informed that the entire premium was being financed.

Under the scheme, Hickman, Inc. arranged the premium financing pursuant to which the insured borrowed the entire premium which then was deposited with Hickman, Inc., which, in turn, remitted the monthly premium payments to the insurer. Although the borrowed funds initially were deposited into Hickman, Inc.'s premium trust account, it was the usual practice to remove funds from that account and to deposit them into other Hickman, Inc. or IFA accounts. Then, those funds were used to pay the debts of Hickman, Inc., salaries and bonuses to officers and employees of Hickman, Inc., including Miller and Mannino, and monthly installments on policy premiums other than the one for which the premium financing had been obtained in the first instance. In sum, not long after the proceeds of premium policy financing were deposited into Hickman, Inc.'s trust account, they were co-mingled with other Hickman Inc. funds and used for purposes other than paying the premiums for which the loan was made, all of which purposes were beneficial to Hickman, Inc., its officers and employees.

Miller's principal responsibility in the Maryland office was to sell insurance and, in connection with placing the coverage that he sold, Miller often applied for the premium financing. Mannino's responsibility included acting as a customer service representative on Miller's accounts. Miller and Mannino routinely were requested to wire funds from the premium trust accounts to other Hickman, Inc. or IFA accounts. Mannino often filled out premium financing application sheets and sent them to the finance company and, in return, received the quotes given by the insurers. She often supplied this figure to Miller and, after the financing arrangement was concluded, Mannino processed the agreement. Mannino's responsibility included receiving checks from the insured, putting them into the trust account, and paying out installments to the insured from the operating accounts. The record established that this so-called "double-financing" policy was a regular practice of Hickman, Inc. with which Miller and Mannino were intimately familiar and in which they knowingly participated. This scheme was in effect at the time of the insurance transaction which is the subject of this litigation.

During the summer of 1996, Miller requested Reliance to quote commercial coverage for Gunther's Leasing Transport, Inc. ("Gunther's"). Reliance offered to provide the requested coverage for a quoted premium price of $1,050,000. In accord with the ususal practice, Miller requested Reliance to provide installment

6

payment terms and Reliance agreed to an interest-free premium installment plan under which Gunther was to make a payment of $210,000 at the beginning of the coverage to be followed eight consecutive monthly payments of $105,000. As envisioned by the standard scheme, Miller passed the premium quote ($1,050,000) along to Gunther's without disclosing that Reliance also had agreed to an interest-free installment plan and, instead, misrepresented to Gunther's that the entire premium was due at the inception of coverage. Thereafter, Gunther's agreed to purchase the coverage from Reliance, and, pursuant to standard practice, Miller and Mannino arranged for the financing of the premium through INAC Corp ("INAC"), a premium financing company.

Although both Miller and Mannino were aware that the Gunther's premium would be financed by INAC, neither Miller nor Mannino informed Reliance of that fact. Miller accepted Reliance's quotation on behalf of Gunther's with the installment plan in place. Reliance then issued the insurance coverage to Gunther's, and Gunther's entered a commercial finance agreement with INAC, the net proceeds of the premium loan being deposited in Hickman, Inc.'s premium trust account, an account over which Miller and Mannino both had actual control.

However, neither Hickman, Miller, nor Mannino remitted the proceeds of the financed premium to Reliance. Instead, Mannino, in accord with the scheme, sent Reliance the premium down payment of

7

$210,000. The remainder of the financed premium was then transferred from the premium trust account to other Hickman, Inc. trust accounts and was used to pay salaries and bonuses to Hickman, Miller, and Mannino and to pay the debts and obligations of Hickman, Inc. including the payment of premiums paid to other insurance carriers.

The record establishes that, by September 1996, the premiums generated by the scheme were insufficient to replace premiums that had been diverted from the premium trust accounts to Hickman Inc. accounts. However, the large infusion provided by the financing of the Gunther's premium permitted Hickman, Miller, and Mannino to cover premiums owed to other carriers and to otherwise finance Hickman Inc.'s operations, including the payment of their own salaries and commissions.

On October 21, 1996, INAC sent to Reliance a form letter that referred to a premium financing arrangement as to the Gunther's policy, advising that the premium had been paid to Hickman Inc. That letter also queried Reliance as to whether the policy had been written in installments and two other ensuing inquiries to the same effect were submitted to Reliance, the last one on November 1, 1996. In response to those letters, an employee of Reliance communicated with Mannino about the INAC inquiries. Mannino claimed to recall little about the substance of the conversation, but she acknowledged that she did not disclose the truth about the

financing of the premium, claiming, instead, that she was unaware if there was an installment plan, and that the insured had not given Hickman, Inc. an option on how to pay the premium.

Hickman, Inc. made the monthly installment payments of $105,000 to Reliance in November and December 1996 and in January 1997. However, by February 1997, Hickman, Inc. was out of funds and no further payments were made. JA 268-69. At the end of March 1997, the Maryland office of Hickman, Inc. was closed, leaving a balance of $472,500 owing to Reliance on the Gunther's policy.


## II.

Thereafter, Reliance instituted this action against Hickman, Inc., Hickman, Miller, and Mannino. The Complaint contained six counts. Hickman, Inc. was a defendant in each count and was the only defendant in two counts, but Hickman, Inc. never answered the Complaint, and default judgment was entered against it in the amount of $472,500 with interest and costs.[3] Reliance moved for summary judgment on Count III, a constructive fraud claim against Hickman, Inc., Miller, and Mannino. The district court, Judge Garbis presiding, granted Reliance's motion for summary judgment, finding: (a) that all three defendants had a fiduciary duty to Reliance under an implied agency relationship and under Maryland's

---

[3] Counts I and VI were eliminated from the case with the entry of default judgment against Hickman, Inc., leaving Counts II, III, IV, and V for resolution.

insurance regulations; and (b) that the defendants had breached their fiduciary duties by not disclosing to Reliance the "double-financing" scheme, by co-mingling premium payments with the funds of Hickman, Inc., and by remitting to Reliance the premium payments received in trust for it.[4]  Thereupon, the district court entered judgment in favor of Reliance in the amount of $472,500 plus pre-judgment interest from June 1, 1997 plus post-judgment interest and costs.  Miller and Mannino appealed from the award of summary judgment on Count III.  While that appeal was pending, Miller and Mannino filed for Chapter 7 bankruptcy protection, and thus the appeal was stayed pending resolution of the bankruptcy proceedings.

    The bankruptcy court refused to discharge the debts created by the judgment entered on Count III, and the district court, Judge Quarles presiding, affirmed that decision.  The discharge ability issue was then appealed to this Court where it was consolidated with the appeal respecting the award of summary judgment on Count III.

---

    [4] Hickman, Miller, and Mannino had moved for summary judgment on all counts against them, Counts II through V.  For the same reasons that resulted in an award of summary judgment to Reliance on Count III, the district court denied the defendants' motions for summary judgment on Counts II, IV, and V.  Neither side moved for summary judgment on Count VI.  Subsequently, Reliance chose not to proceed on Counts II, IV, V, and VI, and those claims were dismissed without prejudice to being reopened in the event that the summary judgment in Reliance's favor on Count III was reversed.

III.

Before proceeding to the merits of the appeals, it is appropriate to note that the scheme involved here, Miller's involvement in it, and a determination that, by participating in the scheme, Miller had violated his fiduciary duties to a similarly situated insurer, was the subject of the decision of the Court of Appeals of Maryland in Insurance Co. of North America v. Miller, 765 A.2d 587 (Md. 2001) (the "IFA Action"). The IFA Action involved the operation of the scheme outlined above, but there the scheme was applied to the placing of other insurance coverage for Gunther's.

On facts virtually identical to those in this record, the Court of Appeals held that:

> [Miller] was an agent of IFA for the purpose of collecting and forwarding premiums, which imposed upon him a fiduciary duty to IFA, which he breached by failing to forward to IFA he relevant premiums and/or by not notifying IFA, or timely sharing with IFA his knowledge, the premiums at issue were being improperly diverted. Additionally, [Miller] breached his fiduciary duty to IFA when he actively participated in obtaining premium financing for an insurance premium of an IFA insured, and used the funds to return to another premium financing company monies due it on a completely unrelated transaction, instead of causing the funds to be remitted directly to IFA for the premium due it. We also hold that [Miller's] actions in the double financing scheme, at a minimum, could constitute negligence.

Insurance Co. of North America v. Miller, 765 A.2d at 588-89.[5]

---

[5] In the IFA Action, Miller admitted that he was an agent for IFA in collecting and remitting premiums for IFA. That difference is not of significance because, as explained previously, the facts in this record show that, under Maryland law, Miller was an agent for collecting and remitting premiums for Reliance.

11

After that judgment, Miller filed for Chapter 7 bankruptcy protection wherein he sought to have the judgment debt in the INA Action discharged in bankruptcy. The bankruptcy court held that the debt was nondischargeable under 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6). The district court affirmed that judgment. Miller v. CIGNA Insurance Co., 311 B.R. 57 (D. Md. 2004). In an unpublished opinion, we affirmed that decision, relying on the reasoning of the district court, which denied the discharge "[b]ecause Miller misappropriated money that he held in a fiduciary capacity for Cigna [INA]." Miller v. CIGNA Insurance Co., 117 Fed. Appx. 259 (4th Cir. 2004) (citing Miller v. CIGNA Insurance Co., 311 B.R. 57 (D. Md. 2004)).

IV.

In awarding summary judgment on the constructive fraud count, the district court held that Miller and Mannino owed to Reliance a fiduciary duty which "derived from two sources, either of which alone would be sufficient: (a) the implied agency relationship between Defendants and Plaintiff and (b) the relevant Maryland regulations governing insurance agents and brokers." It is those determinations that are the focal points of the appeal of this appeal. We review de novo the award of summary judgment.

12

A. The Existence of Fiduciary Duties

Addressing the fiduciary duty arising from an implied agency relationship between Miller and Mannino and Reliance, the district court first explained that, under Maryland law, a broker can serve as an agent for both the insured (in procuring the insurance) and for the insurer (for the purposes of the delivering the policy and collecting the premiums). Neither Miller nor Mannino contest this basic principle. Applying that settled principle to the facts of record, the district court held that, notwithstanding the absence of an express agency agreement, Miller and Mannino were Reliance's agents for the purpose of collecting premiums and remitting them to Reliance. Miller and Manning contend that, on this record, there were factual issues that had to be submitted to a jury to ascertain whether Miller and Mannino were the agents of Reliance. We agree with the district court that the undisputed facts demonstrate that, under settled Maryland law, Miller and Mannino were the agents of Reliance for the purpose of collecting premiums from Gunther and remitting them to Reliance. Accordingly, there was no need  to submit that question to the jury.

As to the fiduciary duty arising under Maryland's insurance regulations, the district court relied upon the Code of Maryland Administrative Regulations ("COMAR"), Title 31, Subtitle 3. In particular, the district court concluded that, under relevant Maryland regulations, Miller and Mannino, in their capacity as

13

brokers, had fiduciary duties not to remove monies from premium trust accounts without the express permission of the insured and not to mingle premium monies with the funds of Hickman, Inc.

In their statement of issues on appeal, Miller and Mannino did not challenge that ruling. However, in the substance of their brief, they assert that the district court erred in holding that those insurance regulations provided an independent basis for a fiduciary relationship between Miller and Mannino and Reliance. In making that argument, Miller and Mannino do not contend that the district court erred in finding that the Maryland regulations actually created fiduciary obligations the breach of which constitute constructive fraud. Instead, they argue that the regulations distinguish between agents and brokers, by making the agent a fiduciary only of the insurer and by making the broker a fiduciary of only the insured.[6]  The argument misses the point because it ignores § 10-127 of the Insurance Code which, along with the definitions set forth in § 10-101(i), makes the broker an agent of the insurer for purposes of collecting premiums. Md. Code Ann.,

---

[6] Mannino did not make this argument in the district court. Instead, she simply ignored the regulation contending that she, individually, could not be impressed with the fiduciary duties to Reliance because she did not agree to act as Reliance's agent or form some contractual relationship with Reliance.  Thus, as to Mannino we need not notice the regulatory argument here.  Singleton v. Wulff, 428 U.S. 106, 120 (1976); Muth v. United States, 1 F.3d 246, 250 (4th Cir. 1993).  However, the argument must be considered because Miller raised it below.

[Ins.] § 10-127, § 10-101(i).  We find no error in the district court's resolution of that issue.[7]


### B. The Issue of Reliance's Reasonable Reliance on the Fiduciary Relationship

The second argument presented by Miller and Mannino is that there was a question of fact for the jury to resolve respecting whether, in perspective of the communications that Reliance received from INAC, Reliance reasonably relied on the existence of the fiduciary relationship.  Although this argument was presented below in context of the summary judgment motion made by Miller and Mannino on Reliance's actual fraud count (Count V), it was raised for the first time on appeal as to the constructive fraud claim.[8]  Hence, the argument need not be considered.

---

[7] Miller and Mannino do not challenge the findings of the district court that, if there is a fiduciary duty, the conduct at issue here breached it.

[8] Miller and Mannino acknowledge that no Maryland decision has subscribed to the novel position that they urge us to take. Instead, they cite decisions, from other jurisdictions, that address reliance on a misrepresentation of fact as an element of a constructive fraud claim.  Those decisions do not support the contention, made here by Miller and Mannino, that the principal's reliance on the fiduciary's proper discharge of fiduciary duties is an element of a claim for constructive fraud by a principal against the agent.

V.

After the district court entered summary judgment on the constructive fraud claim, Miller and Mannino each filed a Chapter 7 proceeding. Reliance filed adversary proceedings in the bankruptcy court seeking to have declared non-dischargeable the debts created by the judgment entered by the district court in favor of Reliance on its constructive fraud claim. The bankruptcy court held that the debts created by the judgment order were non-dischargeable, relying on the findings made by the district court in granting summary judgment. The district court affirmed the bankruptcy court's decision. In so doing, the district court likewise relied on the findings made in the decision granting summary judgment on the constructive fraud claim and held that Miller and Mannino were collaterally estopped thereby.

We review the determination of collateral estoppel de novo. It is somewhat difficult to discern the argument actually being made by Miller and Mannino on appeal but, given a fair reading, it appears to be merely that, if the district court's award of summary judgment on the constructive fraud claim is reversed, then collateral estoppel cannot occur. That argument is of no moment here because, in Part IV, we affirm the judgment of the district court granting summary judgment. In any event, it quite clear that, under settled circuit precedent, this is a case for the application of collateral estoppel. Sedlack v. Braswell Servs.

16

<u>Group, Inc.</u>, 134 F.3d 219, 224 (4th Cir. 1998); <u>Ramsay v. INS</u>, 14 F.3d 206, 210 (4th Cir. 1994).

The bankruptcy court determined that the judgment debt was not dischargeable under 11 U.S.C. §§ 523(a)(2)(A)(4) and (A)(6), and the district court followed suit. We review <u>de novo</u> decisions on matters of law, such as this.

The sections of the Bankruptcy Code on which the bankruptcy court and the district court relied to conclude that the debt was not dischargeable require proof of a fraudulent misrepresentation that: (a) induced another to act, or to refrain from acting; and (b) caused harm to the plaintiff because the plaintiff justifiably relied on the misrepresentation. <u>In re: Biondo</u>, 180 F.3d 126, 134 (4th Cir. 1999). Both the bankruptcy court and the district court found that those elements were present. Miller and Mannino contend that the requisites of the sections of the bankruptcy code on which the bankruptcy court and the district court relied were not satisfied. We conclude that it is not necessary to decide that issue because the judgment debt is non-dischargeable under 11 U.S.C. § 523(a)(4).

Of course, we may affirm a judgment on an alternate ground to those relied on by the district court so long as that basis is made out by the record. <u>Skipper v. French</u>, 130 F.3d 603, 610 (4th Cir. 1997). 19 James Wm. Moore, <u>et al.</u>, Moore's Federal Practice § 205.05 (3d ed. 2005). Under § 523(a)(4), bankruptcy "does not

17

discharge an individual from any debt . . . for fraud or defalcation while acting in a fiduciary capacity. . . ." This record establishes that Miller and Mannino committed constructive fraud and defalcations while acting in a fiduciary capacity. The district court, in <u>Miller v. CIGNA Insurance Co.</u>, 311 B.R. at 61-62, based on virtually the same evidence that was presented here, concluded that a virtually identical debt was not dischargeable under § 523(a)(4). We, albeit, in an unpublished opinion, affirmed on the basis of the district court's opinion. We believe that, on this record, the same rationale applies here. Therefore, we affirm the nondischargeablity determination on the basis of § 523(a)(4).

For the foregoing reasons, the judgments of the district court on appeal in No. 00-2028 and in No. 04-1843 are

<u>AFFIRMED</u>.

18